State v. Bank of Western.

to increase the number of votes necessary to divide a county which is clearly within the legislative power. (*State v. Winkelmeir*, 35 Mo., 103 ; *State v. Francis*, 95 Id., 51 ; *State v. Sutterfield*, 54 Id., 393 ; *State v. Brassfield*, 67 Id., 331 ; *State v. Mayor*, 73 Id., 435 ; *State v. Binder*, 38 Id., 451 ; *Bassett v. Mayor*, 37 Id., 270 ; *State v. Swift*, 69 Ind., 505 ; *Stevenson v. Babcock*, 17 Neb., 188 ; *State v. Lancaster Co.*, 6 Id., 474 ; *State v. Gosper*, 3 Id., 285.) If in enacting section 11 the legislature exceeded its authority, not only the section mentioned, but the entire act is void. (Cooley on Constitutional Limitations [6th Ed.], 211, 212 ; *Monroe v. Collins*, 17 O. St. 665 ; *State v. Com. of Perry Co.*, 5 Id., 497 ; *State v. Donsonmay*, 28 Wis., 541 ; *Campau v. Detroit*, 14 Mich., 276 ; *Willard v. People*, 5 Ill., 461 ; *Commonwealth v. Potts*, 79 Pa. St., 164 ; *Baker v. Braman*, 6 Hill [N. Y.], 47 ; *State v. Kinzer*, 20 Neb., 176 ; *Myers v. English*, 9 Cal., 342 ; *People v. Mathews* 47 Id., 442.

STATE OF NEBRASKA V. BANK OF WESTERN.

[FILED MARCH 9, 1892.]

**Banks: DRAFTS: DISCREPANCY IN AMOUNTS: RIGHTS OF PAYEE.** The cashier of the Bank of W. drew a draft on the Chase National Bank of New York in favor of R. This draft stated the amount in figures as "$500" and in writing "five and no 100 dollars." The purchaser paid the cashier $500 for the draft

and supposed it was for that amount. The drawee refused to pay more than five dollars. The Bank of W. afterwards being declared insolvent and placed in the hands of a receiver, *held*, that upon the conceded facts R. was entitled to be paid $500, now in the hands of the drawee.

ORIGINAL insolvency proceedings. Instituted under the provisions of ch. 37, Law 1889.

*Geo. H. Hastings, Attorney General,* for the state.

*Letton & Hinshaw,* for intervenor, cited: *Fonner v. Smith,* 31 Neb., 107; *Roberts v. Corbin,* 26 Ia., 315; Morse on Banking, 376; *First Natl. Bank of Cincinnati v. Coates,* 3 McCrary [U. S.], 9; *German Savings Bank v. Adae,* 8 Fed. Rep. [Mo.], 108; Id., 540; 2 Dan., Neg. Inst., 528–37; 2 Parsons, Notes & Bills, 58, 59; *Dutcher v. Importers & Traders Natl. Bank,* 59 N. Y., 5.

MAXWELL, CH. J.

The defendant is an insolvent institution, now being wound up under the banking law of this state. One J. E. Roberts filed a petition to intervene as follows:

"Now comes J. E. Roberts and shows to the honorable supreme court that he is interested in the matter of the disposition of certain funds claimed by A. C. White, receiver of the Bank of Western, and prays that the respective rights of said petitioner and said receiver to said funds may be herein adjusted; said rights arising as follows:

"On the 28th day of July, 1891, one Jesse Roberts purchased from the said Bank of Western a check on the Chase National Bank of New York for the sum of $500 and received from the cashier of said Bank of Western a check, of which the following is a true copy:

"'BANK OF WESTERN.    No. 6312.

"'WESTERN, NEBR., July 28th, 1891.

"'Pay to the order of Dillon Roberts, $500.00, Five and $\frac{no}{100}$ dollars.    D. J. MAYNARD,

"'To Chase National Bank, N. Y.    *Cashier.*"

"'No protest.'

"In the space below the number in the upper right hand corner of the check was cut through the paper with a perforator or machine usually employed by banks for that purpose, the following, $500$, the dollar mark being placed both before and after said figures 500. Said Jessie Roberts paid to D. J. Maynard, cashier of said Bank of Western the full sum of $500 for said above described check, and said check was intended by all parties to be for the sum of $500, but by mistake the said cashier, D. J. Maynard, wrote therein the words "Five and $\frac{no}{100}$ dollars," instead of "Five hundred and $\frac{no}{100}$ dollars," as he and all parties intended. Said check was indorsed "Dillon Roberts" by the payee thereof, and was on the 10th day of August, 1891, presented to the Chase National Bank of New York for payment. Payment thereof was refused by said Chase National Bank for a larger sum than $5, the amount written in the body of the check. Notice was then given to the Bank of Western and to said Dillon Roberts of the non-payment of said check and the reason therefor given by said Chase National Bank, and on the 2d day of September, 1891, the said D. J. Maynard, cashier, made a certificate and affidavit in words and figures as follows, to-wit:

"'WESTERN, NEB., Sept. 2, 1891.

"'This is to certify that on the 28th day of July, 1891, I drew a draft, No. 6312, on the Chase National Bank of New York payable to Dillon Roberts. I intended to draw said draft for five hundred and $\frac{no}{100}$ dollars, and I at the same time credited the account of the Chase National Bank $500 and received from Mr. Jesse Roberts

15

$500 for said draft. By an error I wrote 'Five and $\frac{no}{100}$ dollars' in the body of the draft. This was an error, as the stub in the draft book plainly shows, and the credit on the books of the Bank of Western of that date also shows. The draft, No. 6312, herewith attached, is the draft, and was intended to be for $500.

"'D. J. MAYNARD,

"'Late Cashier of the Bank of Western.

"'Subscribed and sworn to before me, this 2d day of September, 1891.        W. S. GRAFTON,

"'Notary Public.'

"Said check was again presented for payment to the Chase National Bank for said Roberts with said certificate and affidavit attached, and said bank again refused to pay the same, and now holds said sum of $500 in its possession. The said check is now the property of J. E. Roberts, and he is now the owner of all the rights and title that Jesse Roberts and Dillon Roberts may have or have had in and to said sum of $500. Immediately after the purchase of said check the sum of $500 was sent by the Bank of Western to the Chase National Bank of New York to meet said check, and received by said bank, and no demand was ever made by said Bank of Western or the receiver thereof for said fund of $500 until long after both of the said presentations for payment, when, as your petitioner is informed and believes, said receiver drew on said Chase National Bank for the said sum, and payment of the draft was refused until the rights of the parties were adjudicated.

"The petitioner further avers that the books of the Bank of Western show that the Chase National Bank was credited with the amount of said check and that, as shown by said books, nothing is due from said Chase National Bank to said Bank of Western, or was due when the said receiver took possession of said bank. He further shows to the court that at the time said check was purchased

neither he, said Jesse Roberts, or Dillon Roberts had any notice or knowledge of the insolvency of said Bank of Western, that said check was bought in the usual and ordinary course of business, and had it not been for the mistake made by the cashier would have been cashed before the said Bank of Western was put into the hands of said receiver; that this petitioner is suffering great loss, damage, and inconvenience by reason of the premises, the Chase National Bank holding said money of petitioner until said receiver consents to its payment to petitioner or releases all claims thereto. He further avers that said receiver claims said money as the property of the Bank of Western and denies the right of this petitioner thereto.

"Wherefore your petitioner prays for the judgment of this honorable court in the premises, that it declare the said sum of $500 to be the property of this petitioner, and that it further declare that the said receiver of said Bank of Western has no right nor title thereto, and that it perpetually enjoin the said receiver of the Bank of Western from in any way attempting to collect the same or asserting right or title thereto, and for such other and further relief as justice and equity may require."

This is supplemented by an agreed statement of facts, as follows:

"Now comes J. E. Roberts and A. C. White, receiver of the Bank of Western, by George H. Hastings, attorney general, and hereby agree and stipulate that in respect to all matters in controversy between them the following is a true statement of facts:

"First—It is stipulated and agreed by and between said parties that all the facts set forth in the petition in intervention of the said J. E. Roberts, filed herein are true.

"Second—In addition to said facts, it is further stipulated and agreed by and between said parties that on the 28th day of July, 1891, that one Jessie Roberts purchased from the said Bank of Western a check on the Chase National

Bank of New York for the sum of $500, and paid for the same by giving his individual check for the sum of $300 to said Bank of Western, and also the individual check of said J. E. Roberts for the sum of $200, both of which said checks were drawn upon said Bank of Western, and made payable by it. It is further stipulated and agreed that said sum of $300 for which said check of $300 was given by said Jesse Roberts, had been deposited in said Bank of Western by said Jesse Roberts on the —— day of August, 1890, and had remained on deposit in said Bank of Western from said time until said 28th day of July, 1891, and that said sum of $200, for which said check was drawn, had been deposited by said J. E. Roberts in the month of July, 1891 and had so remained on deposit until said 28th day of July, 1891.

"Third—It is further stipulated and agreed by the parties hereto, that after the said 28th day of July, 1891, and prior to the failure of said Bank of Western, about the 17th day of August, 1891, that checks or drafts other than the one in controversy in this action were drawn by said Bank of Western, by its said cashier, D. J. Maynard, upon said Chase National Bank of New York and upon presentation were paid by said bank."

The case is submitted to the court on these pleadings. It is clearly shown that the intervenor purchased of the defendant and paid for a draft for $500 on the Chase National Bank of New York. The amount was stated in figures "$500," but in writing the amount the word "hundred," either by accident or design, was omitted. It was intended, however, as a draft for $500, and in this proceeding will be so regarded. The equities of the case are clearly with the intervenor, and his rights in the premises will be protected. He is therefore entitled to the $500 in question in the Chase National Bank of New York.

JUDGMENT ACCORDINGLY.

THE other judges concur.